UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| T.V., *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|    v. | )  No. 1:09-cv-00290 PPS-RBC |
| | ) |
| SMITH-GREEN COMMUNITY | ) |
| SCHOOL CORPORATION, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**Plaintiffs' Sur-Reply in Support of Amended Motion for Class Certification**

**I.  Introduction**

During the summer of 2009, plaintiffs T.V. and M.K. posted photographs, on their MySpace pages, taken of themselves and friends outside of school. Depending on one's viewpoint, the photographs can be characterized as silly, sophomoric, in bad taste, and/or risqué. This out-of-school activity led to punishment – a suspension from co-curricular, extra-curricular, and athletic activities - because of the Churubusco High School's Code of Conduct that allows the principal to punish students engaged in these activities if the students do anything, in or out of school, that "reflects discredit" upon the high school or "creates a disruptive influence on the discipline, good order, moral, or educational environment" of the high school. (Answer to Amended Complaint [Doc. No. 48] ¶ 17). The plaintiffs now seek not only damages for their unconstitutional suspension but prospective relief to prevent the defendants ("School") from punishing them, and the class of all other students subject to the Code of Conduct, in the future for activity

1

entirely outside of the school that allegedly discredits the High School without causing any substantial disruption in educational activity.

The issue of whether the Constitution is violated by a school's attempt to punish students for activity that takes place outside of the school is one that courts are addressing with ever-increasing frequency, particularly with the advent of websites and social media. *See e.g.,* Plaintiffs' Reply Memorandum in Support of Motion for Class Certification [Doc. No. 30] at 12-13; *J.S. v. Blue Mountain School Dist.*, -F.3d-, 2010 WL 376186 (3rd Cir. Feb. 4, 2010); *Layshock v. Hermitage School Dist.*, -F.3d-, 2010 WL 376184 (3rd Cir. Feb. 4, 2010).[1] The question of whether a student's expressive conduct, engaged in totally outside of the school environment during a time when school is not even in session, can nevertheless be punished by the School is a question that affects not only the plaintiffs, but all students at the high school who are engaged in athletic, extra-

---

[1] Throughout their Sur-Response the School suggests that these cases, and the general constitutional rights asserted by the plaintiffs, do not apply here because the girls were suspended from extra-curricular, co-curricular, and athletic activities, not school itself. However, students participating in these activities certainly do not surrender their First Amendment rights. *See e.g., Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755 (9th Cir. 2006) (holding that suspended basketball players' petition requesting resignation of the coach was constitutionally protected speech). In *Lowery v. Euverard,* 497 F.3d 584 (6th Cir. 2007), cited by the School, the court concluded that there was no First Amendment violation when players were removed from a high school football team after signing a petition indicating that they hated the coach and did not want to play for him. *Id.* at 585. The court noted that this was disruptive to the team and that the plaintiffs had no right to play football for a coach while actively undermining his authority. *Id.* at 600. However, this does not mean that a student involved in athletics, extra-curricular, or co-curricular activities has no First Amendment rights. "Of course, players do not completely waive their rights when they join a team: a coach could not dismiss a player simply because the player had religious or political views that were unpopular with his teammates." *Id.* Indeed, in the seminal case of *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503 (1969), where the Court established the rights of students to engage in expressive activity provided that it did not substantially disrupt the educational environment, the Court stressed that a student has First Amendment rights "[w]hen he is in the cafeteria or on the playing field." *Id.* at 512-13. Similarly, the plaintiffs and the putative class here have not waived their constitutional rights – particularly their right to express themselves outside of the school environment - because they participate in extra-curricular, co-curricular or athletic activities.

2

curricular, and co-curricular activities. It is therefore appropriate to certify this case as a class action inasmuch as the class of students is affected.

## II. The explicit requirements of Rule 23(a) of the Federal Rules of Civil Procedure are met here

### A. Numerosity

In continuing to argue against numerosity, the School notes that plaintiffs are not really challenging the Code of Conduct, but are only challenging how it was applied in this one particular occasion. Therefore, the School argues, there is no class, despite the fact that the class, as defined by the plaintiffs, is clearly numerous. This is erroneous.

Principal Couch has asserted that the reason the plaintiffs were disciplined was because he deemed the photographs to be "highly inappropriate and that by posing for the photographs and posting them on the internet, the students involved were reflecting discredit upon Churubusco High School. (Affidavit of Austin Couch ¶ 7, Attached to Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification [Doc. No. 18]). Principal Couch also notes in his affidavit that the photographs, brought to him during the summer by a parent, were "disruptive" because rumors and discussions of the photographs occurred prior to the beginning of the academic year. (*Id.* ¶¶ 6, 8). This bare allegation of disruption hardly satisfies the requirement that in order for First Amendment activity in the school to be suppressed there must be a showing that "the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 509 (1969) (quoting, *Burnside v. Byars*, 363 F.2d 744, 748 (5th Cir. 1966). In its memorandum the School appears to equate external activity which discredits the school with activity which creates a substantial disruption. The two are

different and it appears clear that the basis for the punishment here, for activity engaged in outside of the school during the summer, was because of the perceived "discredit" that it brought upon the High School.

Therefore, regardless of the validity of the policy when it is applied to in-school activity that is substantially disruptive, the School asserts the right to punish activity which is entirely external to the school that in some way reflects discredit on the school. As the plaintiffs noted in their earlier memoranda, given the potential chilling effect that is created when the School asserts the right to punish because of a determination that the High School has been discredited in some way, every single student engaging in extra-curricular, co-curricular, or athletic activities is affected and burdened. Thus, at this point, more than 200 current students are affected (Affidavits of T.V. and M.K. ¶, attached to Plaintiffs' Reply Memorandum in Support of Motion for Class Certification [Doc. No. 30] as well as future students. Numerosity is met.

### B.  Commonality

In arguing that there are no common questions of law or fact here the School states that the plaintiffs are not complaining of the policy, but the manner in which it was applied. (Defendants' Sur-Response at 6). This argument is part of the School's consistent pattern of conflating the plaintiffs' claim for damages, which of course looks at the past suspension, and plaintiffs' claim for injunctive relief, which looks at the School's continued and future use of a policy allowing punishment for activity which brings "discredit" on the High School. The class seeks to challenge the current and prospective use of the policy. The plaintiffs are concerned about how the policy will be applied to them, and all other similarly situated students, in the future. The School's interpretation

of the policy is currently chilling the plaintiffs and undoubtedly other members of the putative class. The question concerning whether the policy can be applied to activity that takes place outside of the school which allegedly discredits the school without causing any substantial disruption, is one that is common to the entire class of students who are subject to the policy.

If a policy is applied to a particular group, or in a particular situation, in an unconstitutional manner, the fact that the policy is allegedly unconstitutional "as applied" does not prevent certification of the class. *See e.g.*, *Boddie v. Connecticut*, 401 U.S. 371, 372, 383 (1971) (agreeing that as applied to a class of similarly situated persons a state law requiring payment of filing fees for divorces was unconstitutional). The question is whether there is "a legal question which is common to every member of the proposed class, who are in the same position with respect to that question as are plaintiffs." *Vergera v. Hampton*, 581 F.2d 1281, 1283 (7th Cir. 1978). [2]

The School asserts the right to punish students for out-of-school activity which reflects discredit on the High School. All the students impacted, and chilled, by this interpretation, whether they are, or will be, involved in athletics, extracurricular, or co-curricular activities, are affected by the School's interpretation of the policy. This common scheme applied to all class members fulfills the requirement of Rule 23(a)(2). *See e.g., Like v. Carter*, 448 F.2d 798 (8th Cir. 1971) (state policy affecting all welfare

---

[2]   Therefore, the continued insistence by the School that the plaintiffs are mounting an "as applied" challenge to the policy has absolutely no relevance to the class determination. However, to the extent that Code of Conduct is interpreted by the School as allowing punishment for out-of-school activity which is deemed to bring discredit to the High School, although not substantially disruptive of the school, it is arguably unconstitutionally overbroad. *See, e.g., Tinker.* A statute or other rule which is substantially overbroad is facially invalid under the First Amendment. *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989) (plurality opinion). Further argument on this point must await briefing on the merits of the case.

recipients presented a common question of law, despite the factual differences among class members).

### C. Typicality

The School argues that the typicality requirement is not met because the plaintiffs are merely complaining about how the Code of Conduct was applied to them and their situation is unique. This misses the point. The plaintiffs are not seeking a class because of what has happened to them in the past. They are seeking a class because their past experience has demonstrated that the School's policy is to assert the right to punish them and the members of the putative class in the future for engaging in conduct completely outside of the school environment which is deemed to reflect discredit on the school. All members of the putative class are subject to the same policy. For the reasons stated in their earlier memoranda, this establishes typicality.

### D. Adequacy

In claiming that plaintiffs do not satisfy the adequacy requirement of Rule 23(a)(4) the School first engages in an unwarranted personal attack on plaintiffs' parents which can be quickly answered. The School argues that the fact that the parents are proceeding by their initials in this litigation demonstrates that they are not serious about this litigation and therefore they are not adequate representatives of the class. The School argues further that the plaintiffs, represented by the parents, cannot be adequate because pursuing litigation in response to the School's actions "exhibits a serious lack of judgment." (Defendants' Sur-Response at 7).

First, the plaintiffs here are the two minor students, not their parents. A next friend is not the party. *Hall v. Hague*, 34 F.R.D. 449 (D. Md. 1964). Therefore, it makes

6

no sense for the School to direct its arguments against the parents.  In any event, the fact that the parents are proceeding by their initials is solely because their daughters are proceeding by their initials pursuant to Fed.R.Civ.P. 5.2(a)(3), and it makes no sense to demand anonymity for the child while having the parents' names disclosed in that the disclosure will end the child's anonymity.  Additionally, the School's *ad hominem* attack on the parents' "judgment and discretion" (Defendants' Sur-Response at 7) ignores the fact that a parent may not necessarily be proud of what their child has done, but still support the fact that a school cannot deny the child's constitutional rights.  *See e.g., J.S.*, *supra* (parents suing on their own behalf and on behalf of their child who was suspended for creating, at home, an internet profile for the principal which contain profane statements implying he was a pedophile.  The decision notes that the parents punished the child for her action.  2010 WL 376186 at *4); *Layshock*, *supra* (parents suing on their own behalf and on behalf of their child who was disciplined for creating a fictitious internet profile of a principal which indicated, among other things, that he smoked marijuana, used steroids, shoplifted, had gotten drunk, and visited a prostitute.  The decision also notes that the parents had expressed their extreme disappointment in the child, grounded him and had prohibited him from using the computer. 2010 WL 376184 at *3).

      The School's argument also ignores the fact that the plaintiffs are seeking declaratory and injunctive relief for all students at the High School to prevent future use of the Code of Conduct to punish expressive activity which takes place outside of the school but which school officials perceive as bringing discredit on the school.  The plaintiffs, students who are currently chilled in their expressive activity because of the

7

School's interpretation of the Code of Conduct, are seeking injunctive and declaratory relief which is identical to that sought for the entire class. This compels a finding of adequacy. "Plaintiffs and members of the class are both seeking to enforce their rights under federal law . . . Further, the named Plaintiffs will clearly will benefit from the relief sought in this case, thus, their interests are wholly compatible with those of the class and they can be expected to vigorously pursue the litigation." *Evans v. Evans*, 818 F.Supp. 1215, 1220 (N.D. Ind. 1993).

The School argues that the plaintiffs are not adequate as class representatives because they are seeking "monetary damages for themselves and 'personal vindication.'" (Defendants' Sur-Response at 9). However, the School does concede that an individual claim for damages does not necessarily render a class representative inadequate to represent a class for injunctive and declaratory relief. (*Id.*). Indeed, it cites to *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982), where the court noted that:

> [a]n individual claim for large damages does not necessarily make a putative representative's interests "antagonistic" to those of the class; to the contrary, the courts have often viewed the assertion of such a claim as an indication that the representative will prosecute the action vigorously. 7 C. Wright & A. Miller, Federal Practice and Procedure s 1767, at 637-38 (1972). Of course, if the court has reason to conclude that a plaintiff has neglected or will neglect the claims for injunctive relief in his pursuit of his damages claims, it may find him an inadequate representative. But, in this case, there is nothing in the record to indicate that plaintiffs' claims for damages are in any way "antagonistic" to the class claims for injunctive relief. The complaint, in fact, primarily recites are applicable to the entire class.

*Id.* at 335. The School argues from this that the allegations of plaintiffs' complaint are not applicable to the entire class. However, the essence of the complaint is its claim that the punishment of the plaintiffs for out-of-school expressive activity that was not disruptive was unconstitutional and to the extent that the Code of Conduct allows such

8

punishment it is unconstitutional. (Amended Class Action Complaint ¶45 [Doc. No. 43]). The point is that the School asserts the right to punish for activity which, although not substantially disruptive, "discredits" the High School. Whether or not this is correct is the gravamen of plaintiffs' damages claim as well as their claim for injunctive and declaratory relief, both for themselves and the putative class. The adequacy requirement is therefore met given that "regardless of the relief sought, the proposed lead plaintiffs' claims rest on the same theory of liability as to the claims of other class members" and given that the named plaintiffs remain in the High School and subject to the challenged Code of Conduct "they will benefit from any injunctive relief as well." *Ingles v. City of New York*, 2003 WL 402565, *6 (S.D.N.Y. 2003) (rejecting a claim that the named plaintiffs in a class action by prisoners challenging the use of excessive force were not adequate representatives in a class action seeking injunctive relief even though they sought damages).

### III.     The requirements imposed by Rule 23(b)(2) are also met

In this instance, Rule 23(b)(2) requires that the School must be acting, or refusing to act, on grounds generally applicable to the class thereby making final injunctive or declaratory relief appropriate with respect to the class. The School argues that it has no policy applicable to the class of students, but that plaintiffs are only complaining of how the policy was applied to them.

Again, this argument misses the point. The named plaintiffs' damages claims focus on how the policy was applied to them in the past. However, the claim for prospective injunctive and declaratory relief focuses on the School's policy that it contends allows it to punish students for bringing discredit on the School for activities

9

taken place outside of the school environment. This policy affects all members of the putative class, whether they are currently concerned about it or not. Rule 23(b)(2)

> "does not mandate that all members of the (b)(2) class be aggrieved by or desire to challenge the defendant's conduct . . . It does require, however that the conduct or lack of it which is subject to challenge be premised on a ground that is generally applicable to the entire class. . . . [T]he 23(b)(2) class action is an effective weapon for an across-the-board attack against systematic abuse."

*Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (quoting, *Davis v. Weir*, 497 F.2d 139, 146 (5th Cir. 1974)).

Plaintiffs' claim for injunctive and declaratory relief is an across-the-board attack on the Code of Conduct to the extent that the Code is being applied to out-of-school conduct that is deemed to discredit the High School. This meets the requirements of Rule 23(b)(2).

### IV.    Conclusion

For the foregoing reasons the amended motion for class certification should be granted.

/s/ *Kenneth J. Falk*
Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059  ext. 104
fax:  317/635-4105
e-mail:  kfalk@aclu-in.org

Attorney for Plaintiffs

### Certificate of Service

I hereby certify that this  15th  day of February, 2010, a copy of the foregoing was filed electronically with the Clerk of this Court. Notice of this filing will be sent to the

following parties by operation of the Court's electronic filing system and the parties may access this filing through the Court's system.

Linda Polley
HUNT SUEDHOFF KALAMAROS, LLP
Lpolley@hsk-law.com

James J. Shea, Sr.
HUNT SUEDHOFF KALAMAROS, LLP
jshea@hsk-law.com

Emily R. Yoder
HUNT SUEDHOFF KALAMAROS, LLP
eyoder@hsk-law.com

W. Erik Weber
MEFFORD WEBER AND BLYTHE
Erik@lawmwb.com

                                              /s/ **Kenneth J. Falk**
                                              Kenneth J. Falk
                                              Attorney at Law