**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| T.V., a minor child, by her parents, legal guardians and next friends, B.V. and T.V., | ) ) ) | |
| and | ) | |
| | ) | NO. 1:09-CV-290-PPS-RBC |
| M.K., a minor child, by her parents, legal guardians and next friends, G.K. and R.K., | ) ) ) | |
| individually and on behalf of a class of those similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SMITH-GREEN COMMUNITY SCHOOL CORPORATION and AUSTIN COUCH, Principal of Churubusco High School, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

T.V. and M.K. are sophomores at Churubusco High School in Whitley County, Indiana,

and Austin Couch is the principal of the school.  T.V. and M.K., by their parents as next friends,

bring this case  pursuant to 42 U.S.C. §1983, challenging the constitutionality of a policy of

Churubusco High School, administered by Mr. Couch as the principal, which they contend

violates their First Amendment rights.  In the motion presently before the court, T.V. and M.K.

seek the certification of a class composed of students subject to the allegedly unconstitutional

policy. But because the typicality and commonality requirements of Rule 23(a) have not been

met, the motion for class certification will be denied.

1

The amended complaint sets out the following version of the facts underlying T.V. and M.K.'s challenge to the policy.  During the summer of 2009, T.V. and M.K. attended a sleepover with friends who were also students at Churubusco High.  Amended Complaint [DE 43], p. 4.  During the sleepover, the girls took pictures of themselves, including pictures in which they "pretend[ed] to kiss or lick a phallus shaped multi-colored lollipop that they had purchased."  *Id*.  Both T.V. and M.K. posted the pictures on their MySpace pages.  *Id*. at 5.  Someone saw the photos, printed them out and gave them to Principal Couch.  After reviewing the photos and consulting the school's Student Handbook, Principal Couch suspended T.V. and M.K. from extra-curricular activities for the entire 2009-2010 school year.  *Id.*  His decision was made prior to the commencement of the school year.

Eventually, Principal Couch gave the students a chance to have the suspension reduced from the entire school year to one-quarter of the school year.  But to get the reduced penalty, Principal Couch required T.V. and M.K. to attend three counseling sessions and go before the Athletic Board (a group of all-male coaches and Couch) to apologize for their behavior.  *Id*. at 6.  Both T.V. and M.K. complied with Couch's request and their suspension from extra-curricular activities was reduced to a quarter of the school year.

T.V. and M.K. contend that their First Amendment rights of free speech are violated by the policy, because it allows the principal "to bar students from athletics and other extra-curricular activities for expressive activity which takes place off of school grounds and has no effect or impact on the school itself."  Amended Complaint [DE 43], p.1.  The portion of the Student Handbook at issue reads as follows:

> These policies apply to all extra-curricular and co-curricular participants.
> * * *

It shall be recognized that the Principal, by the administrative authority vested in him/her by the Smith-Green Community School Corporation, may exclude any student-athlete from representing Churubusco High School if his/her conduct in or out of school reflects discredit upon Churubusco High School or the IHSAA or creates a disruptive influence on the discipline, good order, moral, or educational environment at Churubusco High School.

*Id*. at 4.

As noted above, the students seek to pursue their complaint as a class action on behalf of a class defined as: "all present and future students at Churubusco High School who are participating, or who will participate, in athletics or other extra-curricular or co-curricular activities."  *Id*. at 3.  The amended complaint seeks class-wide relief in the form of a declaratory judgment finding the policy unconstitutional as applied to "out-of-school activity that is not disruptive to the school" and an injunction enjoining the policy's enforcement to punish students for "actions taken outside of the school that are in no way disruptive of school activities."  *Id*. at 7.  In addition, the amended complaint seeks relief particular to plaintiffs T.V. and M.K., in the form of both damages and expungement from their school records of any references to the incident and their punishment.

By its terms, the policy at issue authorizes discipline either for disruptive conduct or for conduct that reflects discredit upon the school or the Indiana High School Athletic Association (IHSAA).  Because the amended complaint challenges only discipline for conduct that is not disruptive of school activities, T.V. and M.K. appear not to be challenging the constitutionality of disciplinary action for out-of-school activity that *is* disruptive to school activities.

Plaintiffs cite to a number of cases that stand for the proposition that a school district violates the First Amendment when it punishes out of school expressive activity that does not substantially disrupt the operations of the school. [Doc. 30 at 12-13].  *Thomas v. Board of*

*Education*, 607 F.2d 1043 (2nd Cir. 1979); *Shanley v. Northeast Independent School Dist.*,462

F.2d 960 (5th Cir. 1972); *Layshock v. Hermitage School Dist.,* 496 F.Supp.2d 587, 601 (W.D. Pa

2007); *Mahaffey v. Aldrich*, 236 F.Supp.2d 779, 786 (E.D. Mich. 2002); *Killion v. Franklin*

*Regional School Dist.* 136 F.Supp.2d 446, 455 (W.D. Pa. 2001); *Beussink v. Woodland R-IV*

*School Dist.*, 30 F.Supp.2d 1175 (E.D. Mo. 1998); *Klein v. Smith*, 635 F.Supp. 1440 (D. Me.

1986). But interestingly enough, none of these cases relied on by T.V. and M.K. were class

actions.

As the parties seeking class certification, the students bear the burden of demonstrating

that class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008);

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Certification

requires that each of the four requirements of Fed.R.Civ.P. 23(a) be satisfied, namely (1)

numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. The failure of

any one of the four Rule 23(a) requirements defeats certification of a class. *Arreola,* 546 F.3d at

794. In addition, at least one subsection of Rule 23(b) must be shown to apply. *Harper v.*

*Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). Plaintiffs here invoke Rule 23(b)(2),

which applies where "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole[.]"

I am not persuaded that a class action format is appropriate for this case, primarily

because the inherently discretionary application of the challenged policy is necessarily so fact-

specific that the requirements of commonality and typicality are not met. For the same reason,

even the numerosity and adequate class representation requirements are in question.

To meet the commonality requirement, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This means that there has to be a common nucleus of operative facts and the defendants have engaged in "standardized conduct" towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). The focus for this inquiry is whether the claim of class representative has the same "essential characteristics" as the claims of the proposed class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993).

T.V. and M.K. essentially contend that their punishment under the policy violated their constitutional rights of freedom of expression. Resolution of this challenge on the merits will ultimately require determinations such as the nature of the allegedly expressive conduct, whether and to what extent that conduct is protected under the First Amendment, whether the punishment was meted out because the conduct or expression "reflected discredit" upon the school or because it created a "disruptive influence" within the meaning of the policy, and whether the conduct or expression actually did reflect discredit or create a disruptive influence. Each of these questions is fact-specific to what actually occurred with respect to T.V. and M.K. In fact, the analysis may even differ as between T.V. and M.K., depending on factual distinctions as to their conduct as shown in the pictures, their roles in taking the pictures, their roles in posting the images on the Internet, or other matters. The conduct or expression of another student, and the school administration's reasoning and any discipline meted out in response, would require a distinct analysis, both factual and legal. This defeats both the commonality and typicality

5

requirements under Rule 23(a), and is not in concert with the objectives of Rule 23(b)(2) either.

As the Seventh Circuit has noted:

> By virtue of its requirement that the plaintiffs seek to redress a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case **will not depend on adjudication of facts particular to any subset of the class** nor require a remedy that differentiates materially among class members.

*Lemon v. International Union of Operating Engineers*, 216 F.3d 577, 580 (7th Cir. 2000) (emphasis added).

The Seventh Circuit reasoned similarly in *Harper* albeit in a Rule 23(b)(3) context.  In that case a prisoner plaintiff had sought class certification on his claim that a County Sheriff was unconstitutionally holding detainees after bond had been posted.   The Seventh Circuit found that "the constitutionality of this detention depends on whether the length of the delay between the time the Sheriff was notified that bond had been posted and the time that the detainee was released was reasonable in any given case." *Harper*, 581 F.3d at 515.  But reasonableness would in turn depend on a number of individualized determinations such as "what justifications there might be for the delay on that particular day or for that particular detainee - the time of day, whether the jail was processing an unusually large number of detainees at that time, whether other events occurring at the jail legitimately slowed processing times, whether the detainee's lack of cooperation delayed processing, etc." *Id*.  The predominance of such individual issues rendered the case inappropriate for class disposition. *Id.*  Although the *Harper* analysis was particularly focused on Rule 23(b)(3)'s language, its relevance to commonality and typically in general, as always required under Rule 23(a), is plain.  Here, as in *Harper*, constitutionality appears likely to turn on specific circumstances which will vary in each instance.

As stated above, the commonality generally exists when the defendant "has engaged in 'standardized conduct' towards members of the proposed class." *Murray v. Sunrise Chevrolet, Inc.*, 2006 WL 862886, at *2 (N.D.Ill. March 30, 2006); *Keele*, 149 F.3d at 594. T.V. and M.K. do not assert the existence of other students who are similarly situated with respect to expressive conduct and resulting discipline. Instead, they propose a broad class of all students, present and future, to whom the policy *might* be applied. T.V. and M.K. then argue in a conclusory way that being subject to the policy is a common question of law and fact for all students in extra-curricular activities. But no "standardized conduct" on the part of the school administration is alleged in the amended complaint. Instead, only one application of the policy – the actions taken by Principal Couch against T.V. and M.K. – is pled. The lack of any kind of standardized conduct by Principal Couch negates the commonality requirement.

For similar reasons, the typicality requirement is not met here either, because T.V. and M.K.'s claims do not have the "same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1982); *Retired Chicago Police Ass'n*, 7 F.3d at 597. The "essential characteristics" of T.V. and M.K.'s dispute with the school administration involve the what, who, when, where and why of T.V. and M.K.'s conduct and of the administration's response to it. The ins and outs of another student's expression and the administration's response to it will present an altogether different factual scenario. T.V. and M.K.'s claims are therefore not typical of the claims of the proposed class because they do not share the same essential characteristics.

There is a related problem with certifying a class in this case. T.V. and M.K. attempt to obtain class certification by casting their challenge as a broad one to application of the policy to

any out-of-school activity that is not disruptive to the school.  But such a challenge is so broad as

to present a non-justiciable issue.  Justiciability is a fundamental Article III jurisdictional issue,

and where commonality and typicality are present only when the class is defined in such a way

as to remove justiciability, the class cannot be maintained.  The definition of the class is central

to a determination whether the members present justiciable claims.  *Uhl v. Thoroughbred*

*Technology*, 309 F.3d 978, 984 (7th Cir. 2002) ["To resolve this justiciability argument, we must

look at how the class is defined.  If, as Mason argues, the class's claims are future claims, largely

hypothetical at this stage, then the claims may not be ripe.  If that were true, we would have to

vacate the order below and our analysis would end here."]

Faced with similar justiciability concerns in a class-action context, the Seventh Circuit

has noted that "[a] Rule 23(b)(2) class may be maintained when 'final' injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Andrews v.*

*Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008), quoting Rule 23(b)(2).  So, for example,

in a case brought under the Truth in Lending Act, the Seventh Circuit held that because the

remedy of recision of the loan would be dependent upon individual aspects of each class

member's loan transaction, the court found that "a judicial declaration in this situation would be

essentially advisory."  *Id*.  Similarly, the broad class proposed here, and the broad injunctive and

declaratory relief sought, would result in an advisory opinion on the constitutionally permissible

parameters of the enforcement of a policy which is inherently discretionary and potentially

applicable to innumerable factual scenarios.

Finally, one might reasonably question the need for a class action in this type of case

anyway.  But whether the plaintiffs must establish a "need" – in addition to meeting the

requirements of Rule 23 – is uncertain in this circuit.  In *Brown v. Scott*, 602 F.2d 791, 795 (7th

Cir. 1979), the Seventh Circuit commented that "there is little need for a class action when the

issue is the constitutionality of a statute or regulation on its face."  The Seventh Circuit had

"assumed" such a "need" criterion in *Alliance To End Repression v. Rochford*, 565 F.2d 975, 980

(7th Cir. 1977).  But the panel in *Brown*, "without questioning the soundness of that suggestion"

in *Rochford*, nonetheless felt bound by three other previous decisions of the circuit holding that

"if the requirements of Rule 23 are satisfied, class certification should not be refused because of

lack of need."  *Id.*, citing *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978), *Vickers v.

Trainor*, 546 F.2d 739, 747 (7th Cir. 1976), and *Fujishima v. Board of Education*, 460 F.2d

1355, 1360 (7th Cir. 1975).

Other courts have noted that the Seventh Circuit's position on the "need" criterion is the

minority view: "although some courts have rejected the use of a need requirement in actions

brought under Fed.R.Civ.P. 23(b)(2), [citing *Brown*], 'the vast majority of courts have not felt so

constrained, and the need requirement now seems well-accepted as an appropriate consideration

when certifying a Rule 23(b)(2) action.'" *State ex rel. Davis v. Public Employees Retirement

Board*, 855 N.E.2d 444, 454 (Ohio 2006), citing 7AA Wright, Miller & Kane, *Federal Practice

and Procedure (3d Ed. 2005)*, 429, Section 1785.2.

Here, for the reasons noted above, I conclude that class certification is not appropriate for

failure of the requirements of Rule 23(a).  I note, in addition, however, that were the Seventh

Circuit to resolve its apparent internal historical difference of opinion on the "need" criterion in

favor of what is by now the majority view, that consideration would also weigh against class

certification here.  A determination in favor of T.V. and M.K., that school authorities could not

constitutionally punish out-of-school expressive conduct on grounds of disrepute to the school,

would have school-wide impact going forward, without the need for a class-action dimension to

this litigation.

For all the foregoing reasons, plaintiffs' original and amended motions for class

certification [DE 4 & 45] are denied.

**SO ORDERED.**

ENTERED:    March   11  , 2010.

s/ Philip P. Simon

PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
